McNALLYLAW, L.L.C.
93 Main Street, Suite 201
Newton, New Jersey 07860
(973) 300-4260
Attorneys for Arthur Groom & Co., Inc.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

---------------------------------------------------------------x
| | |
|---|---|
| In re : | : Chapter 11 |
| | : |
| ARTHUR GROOM & CO., INC., | : Case No.  22-14127 (VFP) |
| | : |
| Debtor. | : |

---------------------------------------------------------------x

**VERIFIED MOTION OF DEBTOR FOR ENTRY OF AN ORDER
PURSUANT TO 11 U.S.C. §363(c)(2) AUTHORIZING
<u>DEBTOR'S USE OF CASH COLLATERAL</u>**

Arthur Groom & Co., Inc. (the "Debtor") moves this Court for an entry of an order pursuant to U.S.C. §363(c)(2) and F.R.B.P. 4001(b) authorizing Debtor's use of cash collateral and in support thereof, says:

**INTRODUCTION AND JURISDICTION**

1.  This verified motion is submitted in support of the Debtor's motion for entry of an order authorizing the Debtor's use of cash collateral in which TD Bank, N.A. ("TD" or "Lender") may claim an interest; pursuant to 11 U.S.C. §363(c)(2) and Federal Rule of Bankruptcy Procedure 4001 ("Motion").

2.  This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §1334.  This is a "core proceeding" pursuant to 28 U.S.C. §157(b)(2)(A),(M)(O).  Venue is proper in this Court pursuant to 28 U.S.C. §1409(a).

3.  Without the use of the TD's cash collateral, the Debtor will be unable to pay its ordinary and necessary operating expenses including, but not limited to, payroll and related

obligations, tax, rent, utilities and insurance or purchase inventory. As a result, the Debtor's operations would cease resulting in the loss of the going concern value of Debtor causing immediate and irreparable harm.

4. To preserve the Debtor's business and assets for the benefit of the creditors, the Court should authorize the Debtor to use the TD's cash collateral in accordance with the budget attached hereto as Exhibit "A" (the "Budget") and enter the accompanying proposed cash collateral order.

5. As will be demonstrated below, the use of cash collateral in accordance with the Budget will result in no reduction of the Lenders' cash collateral consistent with the Budget.

## BACKGROUND

6. On May 23, 2022 (the "Petition Date") Debtor filed a voluntary petition for reorganization under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Debtor has remained in possession of its assets and continues management of its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

7. Debtor operates a retail jewelry store located at 262 East Ridgewood Avenue, Ridgewood, New Jersey 07450. The Debtor has been in operation for over thirty (30) years at that location.

### A. The Debtor's Pre-Petition Relationship with TD

8. On August 7, 2006, the Debtor borrowed $2 million from TD pursuant to a revolving credit note (the "RC Note"). In addition, on or about August 7, 2006 Debtor borrowed $600,000 from TD as evidenced by a certain term promissory note (the "Term Note").

9. Payment of Debtor's obligations to TD under the RC Note and the Term Note is

secured by a security interest in all of Debtor's personal property and the proceeds therefrom (the "Collateral"). The obligations due under the RC Note came due on November 30, 2009 and Debtor defaulted in the payment of the RC Note.

10. On February 3, 2010, the Debtor filed a prior voluntary petition for relief under Chapter 11 of Title 11, U.S.C. §101 et seq. with the United States Bankruptcy Court, District of New Jersey, captioned as In re: Arthur Groom & Co., Inc., Case No. 10-13221 (MS)(the "2010 Bankruptcy Case").

11. On February 18, 2011 the Bankruptcy Court entered an Order confirming the First Modified Joint Plan of Reorganization (the "2011 Plan") in the 2010 Bankruptcy Case.

12. In connection with the confirmation of the 2011 Plan, Arthur Groom & Co., Inc. requested and the TD agreed to amend and restate the RC Note and the Term Note. As of March 2011, the amended loan principal amount was reset at $1,578,408.38.

13. Arthur Groom & Co., Inc. met all of its obligations under the 2011 Plan from the 2010 Bankruptcy Case, including maintaining payments to TD for many years, until Arthur Groom & Co., Inc.'s ability to remit payments was derailed by a significant drop off in business in 2020 due to Covid-19.

14. On May 18, 2022, TD filed a Verified Complaint in the Superior Court of New Jersey Law Division, Bergen County, entitled T.D. Bank, N.A. v. Arthur Groom & Co., Inc., Docket No. BER-L-2577-22 (the "TD Action") seeking, inter alia, replevin of the Debtor's inventory. A hearing on preliminary restraints requested in connection with TD Action was scheduled to proceed on May 25, 2022. A copy of the Verified Complaint is attached hereto as Exhibit "B."

15. In the Verified Complaint, TD contends that the total amount outstanding pursuant to the amended loan documents is $617,578.21 as of April 5, 2022, including principal of $395,467.52, interest of $134,493.94, $56,715.82 in other fees, $30,900.93 in late charges, plus attorney's fees and costs.

## **RELIEF REQUESTED AND BASIS THEREFOR**

16. In accordance with section 363(c)(2) of the Bankruptcy Code, Debtor seeks authority to use the cash collateral of TD. Without the use of cash collateral, Debtor will be unable to pay its ordinary and necessary operating expenses including, but not limited to, payroll and related obligations, rent, utilities and insurance, and be unable to purchase inventory for its business. If put in such a position, Debtor's operations would cease causing Debtor to suffer immediate and irreparable harm.

17. To preserve the Debtor's business and assets the Court should authorize the Debtor to use cash collateral in accordance with the Budget attached hereto as Exhibit "A" and enter the accompanying proposed cash collateral order.

18. Pursuant to sections 363(c)(2) and 363(e) of the Bankruptcy Code, Debtor should be authorized to use cash collateral on the condition that Debtor provide adequate protection of the interest of an entity in cash collateral.

19. As set forth in section 361(1) of the Bankruptcy Code the granting of a replacement lien in the Debtor's post-petition assets to the extent the use of cash collateral results in a decrease in the value of the secured creditor's collateral is a means of providing adequate protection. See In re Prichard Plaza Assoc, LP, 84 B.R. 289, 302 (Bankr. D. Mass. 1988).

20. The Budget demonstrates that Debtor will operate profitably and there will not be

any diminution in the Collateral. Thus, a replacement lien adequately protects the interest of each creditor asserting a lien in the Collateral.

21. The Debtor is also prepared to make payments to TD as adequate protection. In paragraph 29 of the Verified Complaint, TD alleges that its per diem on the outstanding balance totals $107.11. In a thirty-one (31) day month, this amounts to interest accruing in the amount of $3,320.41 per month.

22. The Debtor proposes to make monthly payments in the amount of $7,500 per month to TD as reflected in the Budget. This payment is sufficient to reduce the amount of TD's claim while the Debtor seeks to restructure its debts in Chapter 11.

23. The Debtor further contends that the value of the Debtor's inventory is more than the entire asserted obligation to TD. As a result, TD is also adequately protected by an equity cushion in its Collateral.

24. Based on the foregoing, the Debtor respectfully submits the entry of the annexed order authorizing use of cash collateral is appropriate.

WHEREFORE, Debtor respectfully requests that the Court grant Debtor authority to use cash collateral pursuant to section 363(c)(2) pursuant to F.R.B.P. 4001(b)(C)(2).

May 27, 2022

        McNally Law, LLC
        Attorneys for the Debtor


        By:   /s/ Stephen McNally
               Stephen B. McNally, Esq.

## **VERIFICATION**

Arthur Groom, of full age, verifies as follows:

1. I am the President of Arthur Groom & Co., Inc., sole principal and officer of debtor in this action and I am authorized on behalf of Arthur Groom Co., Inc., to verify this Motion.

2. I have reviewed the annexed Motion and state that the allegations contained therein are true based on my own personal knowledge and my review of the documents maintained by Arthur Groom Co., Inc. in the ordinary course of its business.

3. I hereby verify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

May 27, 2022

_____
Arthur Groom, President